IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS CORP., | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 17-189-LPS-CJB |
| MESO SCALE DIAGNOSTICS, LLC., | : | |
| Defendants. | : | |
| | | |
| MESO SCALE DIAGNOSTICS, LLC, | : | |
| Counterclaim Plaintiff | : | |
| v. | : | |
| ROCHE DIAGNOSTICS CORP.<br>and BIOVERIS CORPORATION | : | |
| Counterclaim Defendants | : | |

## MEMORANDUM ORDER

Pending before the Court are the parties' *Daubert* motions. (D.I. 166, 168, 170) Plaintiff Roche Diagnostic Corp. ("Roche" or "Plaintiff") moves to exclude certain opinions of Drs. Quentin Mimms and James Wilbur. (D.I. 170) Defendant Meso Scale Diagnostics, LLC ("Meso" or "Defendant") moves to exclude certain opinions from Drs. Richard Crooks and Rene Befurt. (D.I. 166, 168)

Having considered the parties' briefing (D.I. 167, 169, 171, 186, 189, 192, 202-04) and related materials, and having heard oral argument on July 23 ("Tr."), IT IS HEREBY ORDERED that Roche's motion (D.I. 170) is GRANTED IN PART and DENIED IN PART,

Meso's motion to exclude certain opinions of Dr. Crooks (D.I. 166) is GRANTED, and Meso's motion to exclude certain opinions of Dr. Befurt (D.I. 168) is DENIED.[1]

1. Roche's motion (D.I. 170) is granted to the extent it is directed to Dr. Mimms' opinions on apportionment.

The Court agrees with Roche that Meso cannot rely on Roche's valuation of BioVeris to prove damages because the disputes in this litigation involve just 10 of the more than 100 patents involved in Roche's acquisition of BioVeris.[2] (D.I. 171 at 32-36) Meso contends the Roche valuation is an appropriate basis from which to calculate damages because the 10 asserted patents are core (or essential) to the ECL technology to which Roche sought to acquire full rights. (D.I. 192 at 27-28) In essence, Meso argues apportionment is not required because ownership of rights in any of the 10 essential patents would have permitted BioVeris (or any party with exclusionary rights in the essential patents) to engage in a "hold-up" of Roche. (D.I. 192 at 28-29)

Meso fails to cite any case that supports its view of the BioVeris valuation or recognizes an exception in these circumstances to the requirement that patent damages must be apportioned

---

[1] There are three distinct requirements for admissible expert testimony: (1) the expert must be qualified; (2) the opinion must be reliable; and (3) the opinion must relate to the facts. *See generally Elcock v. Kmart Corp.*, 233 F.3d 734, 741-46 (3d Cir. 2000). Hence, expert testimony is admissible if it "is based on sufficient facts or data," "the testimony is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). Rule 702 embodies a "liberal policy of admissibility." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (internal citations omitted). Motions to exclude evidence are committed to the Court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994).

[2] Meso does not dispute these numbers.

2

and awarded on only the patented features.³ Even accepting that a reasonable factfinder could find that Roche may have been willing to pay a premium to acquire the patents subject to Meso's exclusive license, that premium can be accounted for using the appropriate, required apportionment/reasonable royalty analysis.⁴

"The burden of proving damages falls on the patentee." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Given the legal requirement of apportionment, and the lack of any cases supporting Meso's view, the Court concludes that Meso cannot rely on Roche's valuation of the entire BioVeris company (including all intellectual property). Therefore, Dr. Mimms' analysis is not based on a reliable, legally-supported methodology that fits the facts of the case and must be precluded.

2. Roche's motion is granted to the extent it is directed at the date of the hypothetical negotiation.

"[T]he correct determination of the hypothetical negotiation date is essential for properly assessing damages." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012) (internal quotation marks omitted). "The key element in setting a reasonable royalty . . . is the necessity for return to the date when the infringement began," *Wang Labs., Inc. v. Toshiba*

---

³ *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 870 F.3d 1298, 1300-01 (Fed. Cir. 2017) ("For over a century, it has been established by both the decisions of the Supreme Court and [the Federal Circuit] that awards of . . . reasonable royalties for patent infringement must be apportioned between patented and unpatented features."); *Bandag, Inc. v. Gerrard Tire Co., Inc.*, 704 F. 2d 1578, 1582 (Fed. Cir. 1983) ("[A] fee to be used in measuring damages to be paid for infringement of one patent cannot also encompass payments for permission to practice other patented inventions.").

⁴ *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This court has sanctioned the use of the *Georgia–Pacific* factors to frame the reasonable royalty inquiry."); *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (looking to commercial relationship between parties and value of patents to licensee).

3

*Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) (internal quotation marks omitted), in order to "ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement" at that time, *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) (internal quotation marks omitted).

The Court agrees with Roche that the appropriate hypothetical negotiation date here is 2003-04, when Roche first made an out-of-field sale, constituting the date of first alleged infringement. (D.I. 171 at 40-41) (citing D.I. 175 Ex. 36) (showing out-of-field sales at least as early as Feb. 7, 2004) Meso's proposed date of June 2007 – when Roche allegedly first actively induced infringement (D.I. 192 at 35) – is not the date of first infringement; it is not, therefore, a date which can be used for a reliable, legally proper hypothetical negotiation analysis.

Neither the Book of Wisdom (which, in certain circumstances, permits a damages analysis to take into account value that accrued at a date subsequent to the date of hypothetical negotiation, *see, e.g., Comcast IP Holdings I LLC v. Sprint Commc'n. Co., L.P.*, 850 F.3d 1302, 1314 (Fed. Cir. 2017)), nor Dr. Mimms' declaration that his valuation opinion would be the same regardless of whether the hypothetical negotiation were in 2003 or 2007, render Dr. Mimms' analysis legally acceptable. As Meso acknowledges, the parties' relationship changed in a highly material, substantial way between 2003 – when Meso was not the only party with rights that Roche wished to acquire – and 2007, when Meso exclusively held such rights and could (at least in theory) have "held out" for a premium pay out. Given these undisputed facts, Dr. Mimms' analysis, with a hypothetical negotiation date of 2003 and an unsupported assumption that there was no relevant change in circumstances through 2007, does not "fit" the facts of the case or result from a sufficiently reliable methodology. His opinion will be precluded.

3. Roche's motion is granted to the extent it is directed to Dr. Wilbur's opinions on core patents and infringement.

Dr. Wilbur is a General Manager at Meso with extensive experience in ECL; he is also a named inventor on many patents. (D.I. 174 Ex. 64 at A2027-28) Meso seeks to have him testify that Roche's ECL technology cannot be practiced without the asserted Patents, and that the asserted Patents cover all pertinent Roche products. (D.I. 192 at 41)

Meso offers Dr. Wilbur as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), which relates to witnesses who are not required to provide a report. Roche contends, however, that Dr. Wilbur's opinions are not based on his own knowledge and experience, which is required by Rule 26(a)(2)(C). (D.I. 171 at 40-42) (citing D.I. 174 Ex. 71 at A-2281-82) The Court agrees – as even Dr. Wilbur himself has admitted that he did not determine which patents are core but, instead, received that information from others. (D.I. 174 Ex. 73 at 72-74) Nor does Dr. Wilbur claim to have any relevant legal experience to render him competent to opine on ultimate issues of infringement. (D.I. 174 Ex. 64 at A2027-28)

Therefore, Dr. Wilbur's opinions as to which patents are core and whether Roche infringes those patents by practicing its ECL technology are not based on sufficient facts or data using reliable principles and methods. These opinions will be precluded.

4. Roche's motion is denied to the extent it seeks to exclude Dr. Wilbur's testimony on a "kit" or design-arounds.

Roche argues that Dr. Wilbur's testimony as to the meaning of "kit" is contrary to the Court's claim construction. (D.I. 171 at 46-47) (opining that "kit," which has been construed as "a set of materials *packaged to be used together*," may be satisfied by products not in "same bag," "box," or "shipment," so long as items are "sold or . . . *packaged* together in such a way

5

that the *customer intends to use it together*") (emphasis added) The Court is not persuaded that this opinion is contrary to the Court's construction. Therefore, Dr. Wilbur will be permitted to offer this opinion at trial.

Dr. Wilbur will also be permitted to offer his opinion on Roche's inability to design around Meso's patent rights. Although Dr. Wilbur did not perform a claim or technology-specific analysis, and he lacks knowledge of Roche's capabilities (D.I. 171 at 47-48), these arguable deficiencies go to the weight to be given to his testimony, not its admissibility. Dr. Wilbur's opinion is appropriately based on his personal experience, specifically his observation of the development of ruthenium labels at IGEN. This portion of Roche's motion will be denied.

5. Meso's motion to exclude certain opinions of Dr. Crooks is granted.

Roche intends to offer Dr. Crooks to testify that he agrees with Dr. Leventis that TPA does not extend the electric potential of an electrode. (D.I. 167 at 5-6) Putting aside the parties' dispute over the depth of Dr. Crooks' review of fellow expert Dr. Leventis' work (*compare id.* at 8-9 *with* D.I. 186 at 5-11), the Court will exclude Dr. Crooks' testimony because it serves no purpose beyond improperly attempting to bolster the opinions of another expert, i.e., Dr. Leventis.[5] Dr. Crooks does not seek to offer his own methodology or independent analysis. (D.I. 167 at 10-11) The Court will strike the portions of Dr. Crooks' testimony that do nothing more than agree with expert Dr. Leventis.

---

[5] "Merely to have partisan experts appear to vouch for previous experts violates Fed. R. Evid. 403 and would needlessly present cumulative evidence, waste time, and mislead the jury." *Tunis Brothers Co. v. Ford Motor Co.*, 124 F.R.D. 95 (E.D. Pa. 1989); *see also Hartle v. FirstEnergy Generation Corp.*, 7 F. Supp. 3d 510, 525 (W.D. Pa. 2014) (excluding expert testimony that reviewed other experts' work "from the macro perspective" and vouched for or criticized their respective works).

6. Meso's motion to exclude the survey evidence and testimony of Dr. Befurt is denied.

While Roche raises numerous, legitimate concerns about Dr. Befurt's analysis – including but not limited to his use of a non-probability survey panel (D.I. 169 at 12),[6] a technique which has been criticized by courts, *see, e.g., GlaxoSmithKline LLC v. Glenmark Pharm. Inc.*, 2017 WL 8948975, at *10 (D. Del. May 30, 2017), *report and recommendation adopted*, 2017 WL 2536468 (D. Del. June 9, 2017) (noting cases striking analyses using non-probability samples but concluding critiques "go[] to the weight of the evidence rather than to its admissibility") – the Court cannot say that his methodology is legally improper, fails to fit the facts of the case, or falls below the level of reliability required to pass through the *Daubert* "gate." *See generally Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013) (describing Court's role as "gatekeeper"). Dr. Befurt provided a detailed explanation of his methodology, including the reasons for selecting a non-probability sample, his accounting of non-response bias, his methods for ensuring reliable answers, and his reasons for weighing the data in addition to providing the raw data. (D.I. 189 at 18-24) It will be for the jury to assess the impact of Roche's potentially persuasive critiques of Dr. Befurt's analysis and what weight, if any, to accord Dr. Befurt's opinions.

October 21, 2019  
Wilmington, Delaware

HONORABLE LEONARD P. STARK  
UNITED STATES DISTRICT JUDGE

---

[6] *See also* D.I. 191-1 Ex. D. at 81-83 (Dr. Spec testifying about lack of data points from large customers); D.I. 169 at 13-14; D.I. 189 at 7, Ex. 3a (Roche showing four largest respondents constitute roughly same percentage of total respondents as customers, but failing to account for lab size); D.I. 169 at 21-22 (arguing largest respondent reported 250,000 out-of-field uses alone, whereas Befurt's re-weighted calculation produced total of only 125,524 out-of-field uses).

7