IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROCHE DIAGNOSTICS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 17-189 (LPS) (CJB) |
| | ) | |
| MESO SCALE DIAGNOSTICS, LLC., | ) | |
| | ) | |
| Defendant. | ) | |
| ―――――――――――――――――― | ) | |
| | ) | |
| MESO SCALE DIAGNOSTICS, LLC., | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROCHE DIAGNOSTICS CORPORATION | ) | |
| and BIOVERIS CORPORATION, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

## JOINT STATUS REPORT

Pursuant to the Court's direction during the pretrial conference held on November 1, 2019, the parties submit this joint status report identifying issues the parties believe it would be helpful for the Court to address prior to jury selection on November 12, 2019, time permitting.

## I.    Jury Selection Issues

### A.    Questioning of Prospective Jurors

During the pretrial conference, the Court indicated that questioning of prospective jurors who answer "yes" to voir dire questions would take place at sidebar. Roche and Meso Scale respectfully suggest that questioning of prospective jurors can be better accomplished out of the courtroom, in the jury room. Based on the Court's voir dire, it appears this is what the Court intends to do.

## II.      Evidentiary Issues

### A.      Research and Development Summaries Review in 2007

#### 1.      Roche's Position

Roche elected the second option ordered by the Court at the July 23 hearing.  (*See* D.I. 217 at 89-90.)  That is, Roche declined to disclose privileged documents and information relating to its counsel's review of the R&D Summaries in February 2007, and it continues to assert the privilege.  Consequently, while reserving all rights on appeal, Roche agreed that, for purposes of trial and to protect disclosure of its privileged communications, it did not rely in any way on (including that it did not obtain "comfort" from) anything contained in the R&D Summaries or its attorneys' review of those summaries in connection with the BioVeris acquisition in 2007.  As set forth in the August 2, 2019, joint status report, however, the stipulation did not resolve all open issues as concerns the Research Summaries.  (*See* D.I. at 218.)

First, Roche would like to confirm its understanding that if Meso Scale informs the jury that it made the R&D Summaries available for review, Roche will be permitted to tell the jury, without working a waiver, that Roche accepted Meso Scale's offer and reviewed the Research Summaries by its outside counsel (while not presenting any evidence that it relied on that review in 2007 or later).  That Roche's counsel conducted the review is as much an objective "predicate fact" as the fact that the summaries were made available.  (*See* D.I. 217 at 89:19-22.)  Roche does not intend to waive or put the resulting privileged advice at issue by disclosing any part of the privileged communications or claiming reliance on its counsel's review.  However, Meso Scale should not be permitted to leave the jury with the false impression that Roche simply ignored Meso Scale's offer.  Further, Roche should be permitted to point out the limitations imposed by Meso on the review of the R&D Summaries, which were made available only to outside counsel.  Roche does not understand its conditional anticipated proffer of evidence to be

2

inconsistent with the Court's prior ruling, but Roche wants to ensure that it understands and is abiding by the rules of the road for trial.

Second, Roche and Meso Scale differ as to whether, in addition to the stipulation ordered by the Court, Roche's witnesses must also *testify affirmatively*, **and falsely**, that Roche did not rely on the R&D Summaries. While Roche acknowledges that its witnesses could not identify the review as a factor on which Roche relied in 2007, Roche does not believe that its witnesses should be required to give false testimony. The stipulation ordered by the Court aptly serves Meso Scale's expressed purposes here.[1] The case of *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 677 (2010), cited by Meso is inapposite because the parties in that case agreed that the true facts were as stipulated, so no witness had to testify falsely. Here, Roche was compelled to enter into a counter-factual stipulation in order to avoid a privilege waiver.

Third, Meso Scale should not be permitted at trial to comment on or argue—in any way—from the fact that Roche has failed to present to the jury evidence of the advice Roche received from counsel. Notwithstanding Meso Scale's current position, Meso Scale previously stated unambiguously that it intended to argue to the jury based on Roche's failure to disclose privileged information. Since Meso Scale also acknowledges that it intends to base its willfulness claim in part on the R&D Summaries, Roche believes that Meso Scale arguing that Roche failed to disclose privileged communications would implicate 35 U.S.C. § 298 (which prohibits using "the failure of the infringer to present such advice to the court or jury" to prove willfulness). Meso's ambiguous statement in its portion of this report, about what it does not

---

[1] While Roche continues to believe that it should not be required even to *stipulate* to untrue facts to avoid waiving privilege (as opposed to being barred from affirmatively testifying or arguing that it relied on the R&D Summaries), Roche understands that to have been the Court's ruling.

intend to argue, does not resolve the issue.  Roche seeks clear guidance that Meso cannot rely in any way on Roche's failure to disclose its privileged advice—including by suggesting what that advice must have been.

Finally, the stipulation regarding Roche's non-reliance on the R&D Summaries should be limited to the review conducted by Roche's outside counsel before Roche's 2007 acquisition of BioVeris.  As Meso Scale now concedes, its entire motion was framed around that 2007 acquisition and Roche's outside counsel's review of the R&D Summaries that preceded it.  Even though the timeframe and subject limitations were inherent in Meso Scale's motion, Meso Scale now contends that the stipulation must extend to cover subsequent reviews of the R&D Summaries by non-counsel, including, but not limited to, a review conducted by an expert retained by Roche in connection with the case that went to trial in 2013.  That expert offered an opinion in 2012 that, based on his review of the R&D Summaries, there was no overlap between the products made and sold by Roche and the products and processes described in the Research Summaries.  The expert was deposed by Meso Scale in that case, and his work is relevant to willfulness from and after 2012.  Meso misapprehends the significance of that work—it is not being offered for the truth of the matter asserted, but rather is relevant to Roche's state of mind on willfulness.  One of Roche's experts in the current case also performed and disclosed in his report a review of the R&D Summaries.  Roche should have the option of introducing this evidence.

### 2.    Meso Scale's Position

At the July 23, 2019 hearing, the Court gave Roche a clear choice: (1) allow discovery into its attorneys' review of Meso Scale's R&D summaries, or (2) "stipulate that it did not rely in any way on (including that it did not obtain 'comfort' from) anything contained in the R&D summaries or its attorneys' review of those summaries." D.I. 217, Tr. at 91-92; D.I. 201, Meso

4

Ltr. Br. at 3. Roche chose the stipulation. Roche now raises four issues with respect to its stipulation.

First, Roche argues that, even though Roche is stipulating that it did not rely in any way on its attorneys' review of the R&D summaries, Roche should be permitted to tell the jury that the review occurred. That is just a back-door way of disclosing to the jury what the attorneys' advice was. If Roche tells the jury that (1) its attorneys reviewed the R&D summaries, and (2) Roche decided to go ahead with the transaction, the implicit message is that the attorneys gave positive advice. The sword-shield doctrine prohibits Roche from relying on its attorneys' advice, whether implicitly or explicitly. Therefore, Roche should not be allowed to put on any evidence about the review of the R&D summaries beyond its stipulation that it did not rely on the summaries in any way.

Second, Roche argues that its witnesses should not be required to testify consistent with its stipulation. Meso Scale disagrees. "Factual stipulations are binding and conclusive, and the facts stated are not subject to subsequent variation. So, the parties [are] not [] permitted to deny the truth of the facts stated, or to maintain a contention contrary to the agreed statement." *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez*, 561 U.S. 661, 677 (2010) (quoting 83 C.J.S., Stipulations § 93 (2000)) (quotation marks and alterations omitted). Roche's stipulation that it did not rely in any way on the R&D summaries makes that fact true for purposes of this trial. Meso Scale's lawyers should be permitted to cross-examine Roche's witnesses about this stipulated fact, and Roche's witnesses should be required to testify consistent with Roche's stipulation.

Third, Roche argues that Meso Scale should not be permitted to comment on Roche's failure to present evidence of the advice Roche received from its attorneys based on their review

of the R&D summaries. Meso Scale does not intend to argue that Roche acted willfully because it did not present evidence of its attorneys' advice. But Meso Scale should be allowed to argue based on the facts to which Roche stipulated—*i.e.*, that Meso Scale made the R&D summaries available and Roche chose not to rely on them and went ahead with the purchase of BioVeris anyway. In addition, Roche's purported concerns about 35 U.S.C. § 298 will be eliminated if—for the reasons Meso Scale argues above—Roche is prohibited from mentioning that its outside counsel reviewed the R&D Summaries in 2007.

Finally, Roche raises issues regarding other reviews of the R&D summaries. Meso Scale acknowledges that the Court's Order and Roche's stipulation relate only to the review of R&D summaries that Roche's attorneys performed in 2007 prior to Roche's acquisition of BioVeris. Meso Scale does not seek to preclude Roche from presenting evidence about the R&D Summaries from any expert who has been properly disclosed in this case. But Roche has also indicated that it intends to present evidence of a review conducted by an expert Roche retained in a prior litigation who was not disclosed as an expert in this case. Although Roche's stipulation does not cover the 2012 review by Roche's expert in the Chancery litigation, that review should not be admissible in this case because it is hearsay and undisclosed expert opinion testimony. The expert was not designated and did not serve a report in this case. Roche should not be permitted to introduce the opinion of an undisclosed expert whom Meso Scale never had the opportunity to cross examine in this case.

### B.      Stipulation Regarding Chancery Litigation

### 1.      Roche's Position

As contemplated during the pretrial conference on November 1, 2019, the parties have

met and conferred in an attempt to reach a stipulation regarding what may be shared with the

jury regarding the parties' 2010-2015 Court of Chancery litigation.   Although the parties agree

that the entire decision should not be admitted, they have been unable to agree on the terms of

the stipulation.   Roche proposes that the statement for the jury be as follows:

> From June 2010 to June 2015, Roche and Meso Scale were involved in a
> separate lawsuit relating to the 2003 License Agreement between IGEN
> and Roche. That lawsuit was brought by Meso Scale against Roche and
> resolved in favor of Roche. The court in that case determined that Meso
> Scale is not a party to the 2003 License Agreement, did not license any
> rights to Roche in that agreement and has no right to enforce that
> agreement against Roche. The court in that lawsuit stated that it was not
> resolving whether Meso Scale might have patent rights that it could
> enforce against Roche.  The court's decision in that prior litigation does
> not control the jury's resolution of the patent infringement issues in this
> case.

The parties' respective stipulations contain much of the same language, but disagree in

three major respects.   First, Roche's stipulation provides that the Court of Chancery "determined

that Meso Scale is not a party to the 2003 License Agreement, did not license any rights to

Roche in that agreement and has no right to enforce that agreement against Roche."   Meso Scale

wants the clause stating that it "did not license any rights to Roche in that agreement" removed

from the stipulation.   The Court of Chancery's decision, however, made clear that Meso Scale

was not a licensor to Roche no less than eight times.   *See, e.g.*, *Meso Scale Diagnostics, LLC v.*

*Roche Diagnostics GmbH*, No. CIV.A. 5589-VCP, 2014 WL 2919333, *21-24, *27 (Del. Ch.

June 25, 2014).

Second, Meso Scale proposes to stipulate that the Court of Chancery "stated that Meso

Scale may have viable infringement or other claims against Roche for its actions since 2007,"

7

whereas Roche proposes that it "stated that it was not resolving whether Meso Scale might have patent rights that it could enforce against Roche."  Not only does Roche's characterization more closely track this Court's direction in its October 31 Order, but it clarifies that the Court of Chancery left open the question of whether Meso Scale possesses any patent rights that are enforceable against Roche.  *See Meso*, 2014 WL 2919333, at *28.  Meso Scale's language could be understood by a jury to suggest that the Court of Chancery actually considered Meso Scale's infringement claims and believed them to have merit and/or that Roche engaged in some form of wrongful action since 2007.  Roche's language avoids the potential prejudice and jury confusion.

Finally, while Roche is willing to stipulate that the Court of Chancery's decision "does not control the jury's resolution of ***the patent infringement issues*** in this case," Roche cannot stipulate that the decision "does not control the jury's resolution of ***any issue*** in this case." (emphasis added.)  Roche acknowledges that Meso Scale's language tracks the Court's October 31 Order but respectfully objects to the "any issue in this case" language.  Roche submits that the Court of Chancery's decision collaterally estops Meso Scale from re-litigating certain issues, including, but not necessarily limited to, the Court of Chancery's findings that Meso Scale did not license any rights to Roche, that Meso Scale is not a party to the 2003 license agreement, and that Meso Scale cannot enforce the rights afforded to BioVeris under that agreement.  The stipulation proposed by Meso Scale improperly suggests that the Court of Chancery's decision does not control with respect to those issues previously decided.

### 2.     Meso Scale's Position

Although Meso Scale and Roche both agree that a statement of some kind should be provided to the jury regarding the prior litigation between the parties and that the entire Chancery Court decision should not be admitted, the parties have so far been unable to agree on

stipulated language. Meso Scale proposed the following statement to Roche regarding the Chancery litigation:

> From June 2010 to June 2015, Roche and Meso Scale were involved in a separate lawsuit relating to the 2003 License Agreement between IGEN and Roche. That lawsuit was brought by Meso Scale and resolved in favor of Roche. The court in that case determined that Meso Scale is not a party to the 2003 License Agreement and has no right to enforce that agreement against Roche. The court in that lawsuit stated that Meso Scale may have viable infringement or other claims against Roche for its actions since 2007. The court's decision in that prior litigation does not control the jury's resolution of any issue in this case.

Meso Scale's proposed statement is faithful to this Court's order on the parties' motions *in limine*. The Court stated that "[a]ny appropriate stipulation would have to include (perhaps among other things) the 'reality' that 'the prior case was brought by Meso and resolved in favor of Roche," and "that Vice Chancellor Parsons recognized that Meso might have patent rights it could enforce against Roche." D.I. 254 at 2. Meso Scale's proposed statement reflects both the elements the Court identified.

Roche's proposed statement, by contrast, deviates from the Court's order in three significant respects. First, Roche wants to tell the jury that the Chancery Court determined Meso Scale "did not license any rights to Roche." Meso Scale does not believe that is an accurate characterization of the Chancery Court's decision, and this Court did not identify that fact as something that needs to be included in the statement provided to the jury. Moreover, there is no dispute that Roche received something from Meso Scale in 2003. For example, Roche obtained Meso Scale's agreement not to sue Roche for in-Field use of the patented technology. The language Roche has proposed would leave the false impression that Roche received nothing from Meso Scale in 2003, and force Meso Scale to relitigate the issue of what exactly it gave Roche in 2003.

Second, Roche wants to water down Vice Chancellor Parsons's statement that "Meso conceivably may have viable infringement or other claims against Roche for its actions since 2007, when it allegedly began operating deliberately outside of the Field." *Meso Scale Diagnostics, LLC. v. Roche Diagnostics GmbH*, C.A. No. 5589-VCP, 2014 WL 2919333, *28 (Del. Ch. June 25, 2014). Roche wants to tell the jury only that the Chancery Court said it "was not resolving whether Meso Scale might have patent rights that it could enforce against Roche." Again, this Court stated that an appropriate stipulation must convey that the Vice Chancellor "recognized that Meso might have patent rights it could enforce against Roche." Meso Scale's proposed statement accomplishes that, and Roche's does not.

Finally, Meso Scale's proposed statement tracks the Court's statement that it will "instruct the jury that the Chancery decision does not control the jury's resolution of ***any issue*** in this case." D.I. 254 at 3 (emphasis added). Roche wants to re-write the Court's opinion to limit the instruction only to "patent infringement issues" based on arguments about collateral estoppel. But the jury will not be asked to decide any questions of collateral estoppel—those are issues for the Court. The Court's statement is absolutely correct and appropriate with respect to what the jury will be asked to decide in this case.

### C.      Allowable Scope of Mr. Mimms's Testimony

#### 1.      Roche's Position

The parties have been unable to agree about the permissible scope of Mr. Mimms' testimony in light of the Court's *Daubert* opinion.  (D.I. 236.)  The principal dispute among the parties involves what, if anything, Mr. Mimms may say about the relationship between a reasonable royalty ***rate*** and the valuations that Roche prepared in 2006 and 2007 before Roche bought BioVeris.  That the projections might be relevant to an estimate of the percent of Roche's

immunoassay sales that were used out of Field (i.e., the royalty ***base***[2]) does not mean that the 2006/2007 financial valuations can be used in any way to establish a reasonable royalty ***rate***. Meso's attempt to present the valuations to the jury through Mr. Mimms is inconsistent with the Court's *Daubert* decision, which excluded Mr. Mimms' opinions both because the proper hypothetical negotiation date is 2003/04 and because Mr. Mimms' royalty rate was derived from the 2006/2007 valuations of BioVeris's entire patent portfolio and did not apportion value of the specific (then) ten asserted patents.  (*See* D.I. 236 at 2-4.)  The Court precluded Mr. Mimms' ***methodology***, not just his rate and his final damages number.  (D.I. 236 at 3, 4.)

Through a meet-and-confer process, Roche understands that Meso intends to have Mr. Mimms present his rejected methodology (but not his specific damages total) to the jury.  Roche understands Meso's position to be that Mr. Mimms can present all of the same evidence that he relied on in his expert report (including Roche's 2006/2007 valuations of BioVeris) and can suggest to the jury that the reasonably royalty rate should be high, as long as Mr. Mimms does not "sponsor" a ***specific*** rate.

Meso's new approach fares no better than its earlier one because it leaves the jury merely to speculate as to a damages amount.  Moreover, that speculation necessarily would be based on a methodology that has the same flaws that required Mr. Mimms' opinions to be excluded: it would be based on an unapportioned valuation of 100+ patents rather than on the (now) three asserted patents, and it would be based on the value of the patent portfolio ***as of the wrong date***. Any attempt by the jury, on its own, to apportion the 2006-2007 BioVeris valuations to the asserted patents could be based only on speculation.  Each of Mr. Mimms' disclosed opinions

---

[2] Roche also contests Mr. Mimms' royalty base calculation.  But that issue is one for cross examination rather than a *Daubert* motion.

about the relationship between the valuations and the royalty rate are inextricably tied to his now-precluded hypothetical negotiation date and hold-up theories.  Mr. Mimms' approach to calculating a reasonable royalty rate was inconsistent with patent law, and that problem is not remedied by permitting Mr. Mimms to explain the same analysis to the jury so long as he does not perform the final royalty calculation.

Meso's explanation of how Mr. Mimms plans to use the valuations in his testimony highlights the problem.  Meso cites factors 6 and 11 from the *Georgia Pacific* case.  Factor 6 played a central role in Mr. Mimms' royalty rate calculation when he tried to translate the value of BioVeris's entire patent portfolio to the asserted patents.  On factor 11, Roche does not contend that the *Daubert* decision precludes use of the estimated percentage of out-of-Field use to project royalty ***base***.  But any use of Mr. Mimms' rejected methodology to interpret the valuations in testifying about a royalty ***rate*** is plainly precluded.  Meso should not be permitted to backdoor, through the *Georgia Pacific* factors, the precise analytical framework that has already been precluded by the Court twice—both in its *Daubert* decision and in its decision denying Meso's motion for reconsideration.

### 2.    Meso Scale's Position

Although Meso Scale respectfully disagrees with the Court's *Daubert* ruling regarding its damages expert Quentin Mimms, D.I. 236 at 2-4, Meso Scale will abide by the ruling at trial. The Court granted Roche's motion "to the extent it is directed to [M]r. Mimms' opinions on apportionment" and "to the extent it is directed at the date of hypothetical negotiation." *Id.* Mr. Mimms will not offer any opinions on apportionment, nor will he offer any opinions about what the result of the hypothetical negotiation would be. Moreover, Mr. Mimms will not sponsor a specific royalty rate for this case.

The Court's *Daubert* ruling did not, however, exclude all of Mr. Mimms's disclosed opinions. Mr. Mimms has disclosed opinions regarding the appropriate royalty base of infringing sales. Mr. Mimms also has disclosed opinions about the *Georgia-Pacific* factors and the evidence that is relevant to each factor. The jury will be instructed about the *Georgia-Pacific* factors and will be tasked with determining a reasonable royalty if they find infringement. Therefore, Mr. Mimms's testimony about these factors will be helpful to the jury.

Roche argues that Mr. Mimms should not be allowed to even mention Roche's own analysis of the value to Roche of lifting the Field restrictions on its sale of ECL products. But that valuation is integral to Mr. Mimms's calculation of the royalty ***base*** because he relies on Roche's own future projections of out-of-Field sales. Roche did not challenge that part of Mr. Mimms's opinion, and the Court's *Daubert* ruling does not address it.

Neither does the Court's *Daubert* ruling prohibit Mr. Mimms from discussing the Roche valuation in connection with the *Georgia Pacific* factors. Roche's valuation of selling ECL products out-of-Field is directly relevant to several of the *Georgia Pacific* factors, including number 6 ("[t]he effect of selling the patented specialty in promoting sales of other products of the licensee") and number 11 ("[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use"). As the Federal Circuit has recognized, "the infringer's profit projections for infringing sales" is, on its own, a permissible basis for calculating a reasonable royalty. *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010); *see also Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009); *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986); *cf. Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1384-85 (Fed. Cir. 2001)

(reasonable royalty could be based on infringer's business plan that would have been available at the time of the hypothetical negotiation).

Consistent with the Court's *Daubert* ruling, Mr. Mimms will not offer an opinion that Roche's valuation leads to a specific royalty rate. But Mr. Mimms should be permitted to discuss the valuation and its relevance to the applicable *Georgia Pacific* factors. The jury will then be able to consider the valuation and all of the other relevant evidence that would inform the hypothetical negotiation and arrive at a reasonably royalty if they find infringement. The jury will also be instructed about the requirement of apportionment—*i.e.*, "that patent damages must be apportioned and awarded on only the patented features," D.I. 236 at 2-3—and will consider the Roche valuation in light of that requirement.

### D.       Tendering Experts

The parties agree that there is no need to formally tender expert witnesses before they testify.  With the Court's permission, the parties agree that all expert witnesses in the case should be qualified as experts in the field(s) in which they have provided their opinions, as identified in the pretrial report.

### E.       Preserving Confidentiality for Highly Confidential Information

#### 1.       Roche's Position

Roche expects that certain documents with highly confidential product development and sales information may be offered as exhibits at trial but anticipates that only a limited number of documents will fall within this category.  Much of the questioning and testimony regarding these documents is likely to be of a general nature that would not reveal the specific content of the documents.  Roche understands that the Court's strong preference is to maintain an open courtroom at all times.  Therefore, in order preserve the confidentiality of the material, Roche requests that any such documents be displayed only on the personal screens in front of the jurors,

the witness, and the judge, and that the documents not be displayed on the large screen in the courtroom or on the screens on the counsel tables, which may be visible to the gallery.  Counsel will not share paper copies of the documents with client representatives not permitted to review them.  When and if such exhibits are entered into evidence, the documents would be maintained by the Court under seal and would not be available as public documents.

Roche believes this procedure strikes a balance between preserving the confidentiality of the information in the documents and permitting the courtroom to remain open, which is both a more efficient use of the Court's time and consistent with open access to the courts.  If the Court determines that this procedure will result in Roche forfeiting its ability to claim confidentiality for the documents and information, then Roche requests that it be permitted to seek closure of the courtroom and exclusion of Meso representatives not permitted to review the documents under the Protective Order.

### 2. Meso Scale's Position

Meso Scale does not believe that the exhibits that will be admitted into evidence in this case should be shielded from public view in the courtroom. If either party seeks to display an exhibit that Roche believes should be shielded from public view, Roche can raise the issue with the Court on an exhibit-by-exhibit basis.

## III. Other Issues

### A. Whether the Court or the Jury Will Decide Equitable Estoppel

### 1. Roche's Position

Roche has asserted the affirmative defense of equitable estoppel in response to Meso's infringement claims.  (D.I. 48 at 106 ¶ 3.)  Equitable issues are generally determined by the Court, rather than the jury.  Therefore, Roche proposes that the Court, rather than the jury, decide the merits of its equitable estoppel defense following trial.  Meso Scale appears to agree with that

15

approach, and consideration of its arguments regarding the merits of Roche's defense should be deferred until after trial.

### 2. Meso Scale's Position

Meso Scale agrees with Roche that the Court, rather than the jury, should decide the merits of Roche's affirmative defense of equitable estoppel. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) ("As [an] equitable defense[], . . . equitable estoppel [is] committed to the sound discretion of the trial judge."). The evidence in this case does not come close to supporting equitable estoppel. "Three elements are required for equitable estoppel to bar a patentee's suit: (1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013). There is no evidence that Meso Scale engaged in misleading conduct that would have led Roche to infer to Meso Scale would not assert its exclusive license rights against Roche. To the contrary, Meso Scale has long maintained that it has broad exclusive rights to the asserted ECL patents. Roche's own internal documents going back at least as far as 2001 recognized Meso Scale's broad rights. Further, during the entire damages period for this case (April 2011 onwards), Meso Scale and Roche were actively involved in litigation regarding Roche's out-of-Field sales of ECL products—first in the Delaware Chancery Court, then in federal court in Indiana, and then in this Court. Roche could not have reasonably believed that Meso Scale would not assert its rights.

B.     **Dismissal of Counterclaims Related to Unasserted Patents**

1.     **Roche's Position**

On October 29, 2019, just 20 days before trial was set to begin, Meso Scale informed Roche and the Court that it had decided to "streamline" the case by dropping 38 of the 42 asserted claims included in the proposed Pretrial Order filed just one week prior.  (D.I. 244 at 2.) Meso's decision affects 7 of the 11 claims in its Amended Counterclaim.  (*See* D.I. 42.)  More specifically, Meso Scale has not abandoned its claims under Counts 1 ('416 patent), 2 ('089 patent), 3 ('485 patent), 5 ('218 patent), 6 ('782 patent), 8 ('041 patent), and 9 ('607 patent). (*See id.*)  Based on Meso's election, Roche requests that the Court enter an order dismissing those claims with prejudice, with a final judgment on those claims to be entered after trial.  At the very least, Meso should be precluded from seeking any form of relief on those counts pending a final judgment of dismissal.

2.     **Meso Scale's Position**

Meso Scale acknowledges that its infringement counterclaims on the patents it is not pursuing at trial will ultimately be dismissed. The appropriate time for the Court to enter any orders of dismissal is after trial. If the Court agrees with Roche and enters an order of dismissal before trial, the Court should prohibit Roche from offering evidence of the dismissal or making any comment or argument based on the dismissal at trial.

C.     **Meso Scale's "Springing Rights" Theory**

1.     **Roche's Position**

Meso Scale previously argued that it was granted certain "springing rights" upon IGEN's termination of Roche's 1992 License in July 2003.  (*See* D.I. 153 at 13-14.)  Meso Scale has always asserted that these "springing rights" are an independent basis for its claims to an exclusive license of the asserted patent claims.  For example, at summary judgment in 2018,

17

Meso Scale argued that there is an open question whether "when that license was terminated, did Meso Scale spring into the full rights of [Roche] or only into those rights as constrained by the research program and research technologies."  (D.I. 124 at 56:21-25.)

Despite previously claiming that the "springing rights" are an independent basis for its exclusive license, neither Meso Scale's statement of contested facts nor its statement of issues of law includes any mention that Meso Scale expects to present this theory of liability at trial.  (*See* D.I. 238 at Exs. 2.1 and 3.1.)  Meso Scale disclosed only that it intends to prove that it obtained a license to the asserted claims pursuant to its work in the Research Program and the definition of Research Technologies.  (*See id.* Ex. 2.1 at ¶¶ 6, 7, 8, 12.)  Meso Scale did not disclose which of the asserted claims allegedly arose due to its "springing rights" theory.

Subsequent to the pretrial conference, Meso Scale informed Roche that it "does not intend to rely on springing rights *alone* as the basis for its exclusive rights to the asserted patent claims" and that its disclosures in Exhibit 2.1 of the proposed pretrial order regarding the rights it obtained under the Research Program and Research Technologies fairly disclose the rights it obtained pursuant to its "springing rights" theory.  Based on this new revelation, it appears that Meso Scale agrees with Roche that the "springing rights" it obtained, if any, were "constrained by the research program and research technologies," at least as to the remaining four asserted patent claims.  Accordingly, Roche requests that the jury be instructed as such, and that Meso Scale be precluded from proffering evidence regarding the scope of any "springing rights" it obtained.

### 2.      Meso Scale's Position

What Roche refers to as "springing rights" is simply part and parcel of how Section 2.1 of the 1995 IGEN-Meso Scale license agreement works. Section 2.1 provides:

> IGEN hereby grants to MSD an exclusive, worldwide, royalty-free license to practice the IGEN Technology to make, use and sell products or processes (A) developed in the course of the Research Program, or (B) utilizing or related to the Research Technologies; provided that IGEN shall not be required to grant MSD a license to any technology that is subject to exclusive licenses to third parties granted prior to the date hereof. In the event any such exclusive license terminates, or IGEN is otherwise no longer restricted by such license from licensing such technology to MSD, such technology shall be, and hereby is, licensed to MSD pursuant hereto.

"Springing rights" refers to the second part of Section 2.1, after the words "provided that." Meso Scale stated in the Pretrial Order that it intends to prove it has exclusive license rights under Section 2.1 to all of the asserted claims. *See* D.I. 238, Pretrial Order, Ex. 2.1 ¶¶ 2, 3, 6, 7, 8, 12; *id.* Ex. 3.1 ¶¶ 4, 7, 10. In doing so, Meso Scale will prove that it has an exclusive license pursuant to Sections 2.1(a) and (b) as well as the springing rights clause. Meso Scale does not intend to rely on the springing rights clause *alone* as the basis for its exclusive rights to the asserted patent claims. But (for example) Meso Scale does intend to rely on the springing rights clause, in conjunction with Sections 2.1(a) and (b), to demonstrate that its exclusive rights to the use of the patented technology includes use sby hospitals, blood banks and clinical reference laboratories (uses that had been exclusively licensed to Boehringer Mannheim prior to July 2003).

Roche's request for a special jury instruction on the issue of springing rights, and to preclude Meso Scale from offering evidence regarding springing rights, should be rejected. Meso Scale has maintained throughout this case, including in the Pretrial Order, that it will prove it has an exclusive license to the asserted patents by virtue of Section 2.1, including all parts of Section 2.1. Roche has no basis to claim surprise. And the jury will be instructed about the relevant parts

of Meso Scale's license agreement. A separate, special instruction on "springing rights" (it is unclear what exactly Roche has in mind) would be unnecessary and prejudicial.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Steven E. Derringer
BARTLIT BECK HERMAN
    PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL  60654
(312) 494-4400

John M. Hughes
Nosson D. Knobloch
Daniel C. Taylor
BARTLIT BECK HERMAN
    PALENCHAR & SCOTT LLP
1801 Wewatta Street, Suite 1200
Denver, CO  80202
(303) 592-3100

/s/ Jeremy A. Tigan
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Counsel for Defendant/Counterclaim Plaintiff Meso Scale Diagnostics, LLC.*

FRIEDLANDER & GORRIS P.A

OF COUNSEL:

James T. McKeown
Jeffrey N. Costakos
Eric L. Maassen
Kimberly K. Dodd
Rachel M. Blise
Phillip C. Babler
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202
(414) 271-2400

November 8, 2019

/s/ Christopher M. Foulds
Joel Friedlander (#3163)
Christopher M. Foulds (#5169)
Christopher P. Quinn (#5823)
1201 N. Market Street, Suite 2200
Wilmington, Delaware 19801
(302) 573-3500
jfriedlander@friedlandergorris.com
cfoulds@friedlandergorris.com
cquinn@friedlandergorris.com

*Counsel for Roche Diagnostics Corporation and BioVeris Corporation*