IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROCHE DIAGNOSTICS CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| MESO SCALE DIAGNOSTICS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) C.A. No. 17-189 (LPS) (CJB) |
| | ) |
| MESO SCALE DIAGNOSTICS, LLC, | ) **REDACTED –** |
| | ) **PUBLIC VERSION** |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROCHE DIAGNOSTICS CORPORATION and | ) |
| BIOVERIS CORPORATION, | ) |
| | ) |
| Counterclaim Defendants. | ) |

**MESO SCALE'S MOTION FOR RECONSIDERATION OF THE COURT'S *DAUBERT*
RULING ON MESO SCALE'S DAMAGES EXPERT QUENTIN MIMMS**

| | |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | Jack B. Blumenfeld (#1014) |
| OF COUNSEL: | Jeremy A. Tigan (#5239) |
| | 1201 North Market Street |
| Steven E. Derringer | P.O. Box 1347 |
| BARTLIT BECK LLP | Wilmington, DE  19899 |
| 54 West Hubbard Street, Suite 300 | (302) 658-9200 |
| Chicago, IL 60654 | jblumenfeld@mnat.com |
| (312) 494-4400 | jtigan@mnat.com |
| | |
| John M. Hughes | *Counsel for Defendant/Counterclaim Plaintiff* |
| Nosson D. Knobloch | *Meso Scale Diagnostics, LLC.* |
| Daniel C. Taylor | |
| BARTLIT BECK LLP | |
| 1801 Wewatta Street, Suite 1200 | |
| Denver, CO 80202 | |
| (303) 592-3100 | |

Original Filing Date: October 29, 2019
Redacted Filing Date: November 11, 2019

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.   Mr. Mimms's Hypothetical Negotiation Date Is Correct for the Claims Meso will Pursue at Trial ........................................................................................................... 2

    A.   The First Induced Infringement of a Method Claim Occurs on the Date of the First Conduct That Causes and Encourages Infringement ............................. 3

    B.   Roche First Infringed the '939 Patent in 2008 ......................................................... 4

II.  Mr. Mimms Appropriately Apportioned Roche's Valuation ............................................. 5

III. The Court's Decision Will Cause Manifest Injustice ....................................................... 10

CONCLUSION ..................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ............................................................................... 8, 9

*Brambles USA, Inc. v. Blocker*,
    735 F. Supp. 1239 (D. Del. 1990) ............................................................................... 2

*Decca Ltd. v. United States*,
    640 F.2d 1156 (Ct. Cl. 1980) .................................................................................. 6, 9

*DSU Med. Corp. v. JMC Co.*,
    471 F.3d 1293 (Fed. Cir. 2006) .................................................................................. 4

*Intellectual Ventures I LLC v. Check Point Software Techs. Ltd.*,
    215 F. Supp. 3d 314 (D. Del. 2014) ..................................................................... 2, 10

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) ................................................................................... 3, 4

*Max's Seafood Café ex. rel. Lou-Ann, Inc. v. Quinteros*,
    176 F.3d 669 (3d Cir. 1999) ....................................................................................... 2

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017) .................................................................................. 5

*Sprint Commc'ns Co. L.P. v. Time Warner Cable, Inc.*,
    255 F. Supp. 3d 1134 (D. Kan. 2017) ........................................................................ 9

*United Therapeutics Corp. v. Sandoz, Inc.*,
    2014 WL 4259153 (D.N.J. 2014) ............................................................................... 4

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) .................................................................................. 4

## INTRODUCTION

Meso Scale Diagnostics, LLC. ("Meso") respectfully moves pursuant to Local Rule 7.1.5(a) for reconsideration of the Court's October 21, 2019 *Daubert* ruling regarding Meso's damages expert Quentin Mimms. D.I. 236. First, Meso requests that the Court reconsider its exclusion of Mr. Mimms's opinions based on the date of hypothetical negotiation. *Id.* at 3-4. Meso will be dropping all but four claims that Roche did not infringe prior to 2007. Mr. Mimms's date of hypothetical negotiation is undoubtedly correct for these claims.

Second, the Court's ruling that Mr. Mimms cannot base his royalty rate opinion on an internal analysis Roche performed of the value to Roche of lifting the Field restrictions contained in Roche's 2003 license should also be reconsidered. The Court held that Mr. Mimms cannot determine a royalty rate based on this valuation because he did not apportion the value of the patents Meso is asserting in this case versus the rest of the BioVeris patents. *Id.* at 2-3. But Mr. Mimms did perform a valid apportionment and gave an economically valid reason for attributing 100% of the value of lifting the Field restrictions to the patents Meso is asserting here, which indisputably exclude Roche from being able to sell outside the Field.

The Court's decision will cause manifest injustice if left uncorrected. As of now, Meso will not have a damages expert who can sponsor a reasonable royalty at trial, while Roche will. The damages portion of the trial should not be a one-sided affair in Roche's favor.[1]

## ARGUMENT

Reconsideration of a court order is appropriate if "there has been an intervening change in controlling law" or if "there is a need to correct a clear error of law or fact to prevent manifest injustice." *Intellectual Ventures I LLC v. Check Point Software Techs. Ltd.*, 215 F. Supp. 3d 314,

---

[1] Counsel for Meso certifies that they conferred with counsel for Roche in a reasonable effort to reach agreement on this motion, but the parties were unable to agree. *See* Local Rule 7.1.1.

321 (D. Del. 2014). A motion for reconsideration "is the appropriate means of bringing to the court's attention manifest errors of fact or law." *Max's Seafood Café ex. rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 678 (3d Cir. 1999). Whether to grant reconsideration "lies squarely within the discretion of the district court." *Intellectual Ventures*, 215 F. Supp. 3d at 321. "In exercising [that] discretion," however, "the Court must keep an open mind" and "should not hesitate to grant the motion when compelled to prevent manifest injustice or to correct clear error of law." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990).

I. **Mr. Mimms's Hypothetical Negotiation Date Is Correct for the Claims Meso will Pursue at Trial**

In its *Daubert* ruling, the Court concluded that the date of the hypothetical negotiation in this case is 2004, because that is "the date of first alleged infringement." D.I. 236 at 4. Meso respectfully disagrees. But in an effort to streamline this case for trial and in light of the Court's ruling, Meso has decided to drop 38 of the asserted claims and 7 of the asserted patents from this case. Only the following four claims will be litigated at the upcoming trial: Claim 1 of U.S. Patent No. 5,935,779 (the "'779 patent"); Claims 38 and 44 of U.S. Patent No. 6,165,729 (the "'729 patent"); and Claim 33 of U.S. Patent No. 6,808,939 (the "'939 patent").[2]

This streamlining means that the hypothetical negotiation date cannot be any earlier than 2007. There is no meaningful dispute that Roche began infringing the remaining asserted claims only after it acquired BioVeris in 2007. The asserted claims of the '779 and '729 patents are method claims, and Roche did not induce infringement of those claims until after it acquired BioVeris in 2007. Claim 33 of the '939 patent is a product claim that covers products Roche first imported into the United States in 2008. With the claims now at issue, the hypothetical

---

[2] This development supports Meso's position that the parties need no more than 21 hours each for trial. D.I. 238, Proposed Pretrial Order ¶ 66. Roche concedes that the remaining asserted claims cover its accused products. *Id.* Ex. 1, Uncontested Facts ¶¶ 32, 36, 37. Meso has now eliminated all contested infringement issues from the trial.

negotiation could not have taken place before July 2007, when Roche began actively encouraging its customers to use its ECL products outside of the Field to which Meso had consented, and when Roche was preparing to roll-out products that infringed the '939 patent.

### A. The First Induced Infringement of a Method Claim Occurs on the Date of the First Conduct That Causes and Encourages Infringement

In *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), the Federal Circuit held that the date of the hypothetical negotiation for a method claim is the date of the defendant's first "***conduct*** that causes and encourages infringement." *Id.* at 76 (emphasis added); *see also id.* (holding that "a hypothetical negotiation is deemed to take place on the date of the first direct infringement ***traceable to [the defendant's] first instance of inducement conduct***.") (emphasis added). In that case, the district court held the hypothetical negotiation was in 2006 because that was when the defendant was first made aware of the asserted patent. *Id.* at 75. The Federal Circuit reversed, holding that while the defendant was not ***liable*** until it learned of the patent in 2006, the hypothetical negotiation would have taken place in 2003 when the defendant's ***conduct*** began actively inducing its customers to infringe. *Id.* at 75-76.

Here, Roche's conduct causing and encouraging infringement first occurred only after Roche lifted the Field restrictions in 2007. As Roche asserted in its summary judgment reply, "the ***acts*** recounted by Meso" to support its claim for inducement "all occurred in 2007." D.I. 204 at 7; *see also* D.I. 192, Meso SJ Resp. at 15-16 (summarizing evidence that Roche began actively encouraging out-of-Field uses after acquiring BioVeris in 2007). Roche has never identified a single act of inducement that occurred prior to 2007. As Roche itself has recognized, "knowledge of customer infringement is not enough to show inducement. . . . '[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement.'" D.I. 171, Roche SJ Br. at 20 (quoting *DSU Med. Corp. v. JMC Co.*, 471 F.3d 1293, 1306 (Fed.

3

Cir. 2006) (*en banc*)). Before lifting the Field restrictions in 2007, Roche repeatedly instructed its customers not to use Roche's ECL products outside of the IVD Field. *See* Ex. A (Feb. 2004 email with Roche letters and labels communicating Field restrictions to its customers). This is the opposite of inducement; Roche **actively discouraged** its customers from infringing. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328-29 (Fed. Cir. 2009) (no inducement where "product instructions teach an undisputedly non-infringing use"); *United Therapeutics Corp. v. Sandoz, Inc.*, 2014 WL 4259153, at *18-21 (D.N.J. 2014) (no inducement where label warned against using the product in an infringing manner). Thus, under the holding in *LaserDynamics*, the hypothetical negotiation for the asserted method claims must be July 2007.

Roche misapprehended *LaserDynamics* in its summary judgment reply brief, arguing it means the hypothetical negotiation for inducing infringement of a method claim is the date of the first direct infringement (*i.e.*, when the defendant's customer first practiced the asserted claim). *See* D.I. 204 at 20-21. This is not so. Instead, *LaserDynamics* held that "a hypothetical negotiation is deemed to take place on the date of the first direct infringement ***traceable to [the defendant's] first instance of inducement conduct***." 694 F.3d at 76 (emphasis added). Roche ignored the latter half of the court's holding and thus missed its central insight: The first induced infringement of a method claim occurs when the defendant's conduct first induces someone else to practice that method. Roche began such inducement only after acquiring BioVeris in 2007.

**B.  Roche First Infringed the '939 Patent in 2008**

The '939 patent covers sulfonated ruthenium labels. Roche developed products using a sulfonated ruthenium label abroad in 2007, and sold products incorporating this ruthenium label in the United States starting in 2008. Ex. B, Ofenloch 30(b)(6) Dep. at 111:5-10, 114:11-15, 114:19-115:16. The hypothetical negotiation for this patent could not have occurred in 2004; Roche had not even begun developing infringing products by that date. Instead, the earliest

4

possible date for the hypothetical negotiation over the '939 patent is in 2007, when Roche had developed products using a sulfonated ruthenium complex and was preparing to sell them in the United States. *See Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) (hypothetical negotiation date is "just before infringement began"). Because that coincides with the time that Roche began inducing infringement of the other asserted claims, the damages analysis in this case can be addressed through a single hypothetical negotiation taking place in July 2007.

## II.    Mr. Mimms Appropriately Apportioned Roche's Valuation

As part of his reasonable royalty calculation, Mr. Mimms considered an internal Roche analysis of the value to Roche of gaining freedom to operate and being able to sell outside the Field specified in its 2003 license. *See* Ex. C, Mimms Rep. ¶¶ 54-77. The Court held that Mr. Mimms cannot rely on Roche's valuation as part of his damages opinion because he did not apportion it between the patents Meso is asserting in this case and the remainder of the more than 100 BioVeris patents. D.I. 236 at 2. The Court erred in reaching this conclusion because Mr. Mimms did in fact perform an appropriate apportionment.

The Court stated that, because he did not perform an apportionment, Mr. Mimms "cannot rely on Roche's valuation of the entire BioVeris company (including all intellectual property)." *Id.* at 3. But Mr. Mimms did not base his damages opinion on a valuation of *BioVeris* at all. He used a Roche analysis of the value *to Roche* of lifting the Field restriction in the 2003 license.[3] This analysis included, among other things, new out-of-Field sales Roche expected to be able to make and the value of avoiding "tender risk"—*i.e.*, in-Field sales Roche expected to make only if it had the ability to also sell its products for out-of-Field uses. Ex. C, Mimms Rep. ¶ 68. Roche's 30(b)(6) witness confirmed that the valuation Mr. Mimms used "focuses only on the value of

---

[3] Mr. Mimms specifically excluded other aspects of the value of BioVeris from his analysis, such as BioVeris's physical assets and Roche's obligation to pay BioVeris 65% of the revenues from out-of-Field sales under the 2003 license agreement. Ex. C, Mimms Rep. ¶¶ 55, 76.

5

lifting the field restrictions" and "doesn't look at the value of any other BioVeris assets that Roche acquired in 2007." Ex. D, Nuechterlein 30(b)(6) Dep. at 81:20-82:2.

The Roche valuation Mr. Mimms used in his analysis is already apportioned down to just the value that BioVeris's intellectual property in the ECL space would provide to Roche. Mr. Mimms determined that, in assessing a reasonable royalty, it is appropriate to apportion all of the value of Roche's freedom to operate to the patents Meso asserts in this case. Mr. Mimms then further apportioned by applying the value of freedom to operate only to sales of the accused products in the United States during the applicable damages period. Ex. C, Mimms Rep. ¶¶ 186-89. Although Meso is asserting a subset of the patents Roche acquired, it is not the raw numbers that matter but rather the rights embodied in the patents. *See Decca Ltd. v. United States*, 640 F.2d 1156, 1180 n.73 (Ct. Cl. 1980) ("The number of patents involved in a licensing agreement is not the material factor in determining the license's worth; it is the value of the rights embodied in those patents."). The thing Roche valued—its ability to sell out-of-Field—is reflected in the asserted claims because the undisputed evidence in this case shows that those claims alone could completely block Roche from selling out-of-Field.

The patents Meso is asserting in this case embody the entirety of the right to exclude conferred by the BioVeris portfolio because they are "core" or blocking patents. The asserted patents cover such fundamental aspects of ECL immunoassay technology that Roche has "no reasonable way to design around them." Ex. E, Wilbur 2019 Dep. at 76:21-77:23. As Dr. Wilbur explained, "if you look over the course of time of ECL technology . . . you see there are certain things that have persisted throughout the technology have not been readily designed around or replaced, the ruthenium labels, the amines, some of the microparticle work." *Id.* at 115:11-23;

6

*see also id.* at 115:24-116:20 (failed efforts to design-around, and the significant money that has been paid for access to these patents demonstrates absence of design-around).[4]

Roche has not identified a design-around or a non-infringing alternative, much less presented any evidence contesting the centrality of the asserted claims. To the contrary, both IGEN and Roche have acknowledged the breadth of the IGEN/BioVeris patents, and that the "core" patents have the effect of blocking competitors from practicing ECL. In a 2003 presentation to investors, IGEN stated that the patents in its portfolio "are often inter-related and have been expressly set up so that even if one core patent were to expire or to be found to be invalidated, a competitor will find it useless because it couldn't have access to the other set of core patents." Ex. F, IGEN Presentation at 7. Similarly, Roche's CEO noted the significance of what he called "basic ECL patents," telling the Roche Board that "[t]he basic ECL patents are valid until 2012 in Europe and 2018 in the US." Ex. G, 2007 Humer Ltr. at 7, Item 25.[5] Indeed, Roche admits that two of the asserted patents (the '779 patent and the '729 patent) cover all of the accused products. *See* D.I. 238, Ex. 1, Uncontested Facts ¶¶ 32, 36, 37.

Mr. Mimms explained why it is appropriate to apportion the full value of Roche's internal valuation to the asserted blocking patents: "Because the core ECL Patents cover technology that Roche requires to practice ECL and to market and sell ECL instruments and immunoassays, and because Roche has no reasonable or realistic way to design around them, it is not material whether there are eight or four or two such patents in effect at a given time." Ex. H, Mimms Reply Rep. ¶ 52. Mr. Mimms explained that "Roche would be willing to pay the royalty

---

[4] The '729 patent broadly covers the use of amines in ECL immunoassays and the '779 patent broadly covers the use of microparticles in ECL immunoassays.

[5] Roche's 30(b)(6) witness referred to these patents as "the core patents." *See* Ex. D, Nuechterlein 30(b)(6) Dep. at 182:5-183:1.

7

amounts" described in his report "until all such core ECL Patents have expired." *Id.* This is a reliable opinion that makes good economic sense. Consider a hypothetical negotiation between two parties—an infringer and a holder of ten blocking patents. Each patent in the portfolio can completely exclude the infringer's products from the market. In such a negotiation, acquiring nine of the ten blocking patents would be worthless to the infringer because the tenth patent would still exclude its products from the market. In other words, the multiple blocking patents do not have individual value to the infringer on a patent-by-patent basis but rather have value only on an all-or-nothing basis.[6] This is precisely why Roche's own valuation did not evaluate the BioVeris portfolio on a patent-by-patent basis.[7] *See* Ex. I, Jarosz Dep. 154:13-155:8.

The Court's opinion states that Meso did not cite any case that supports Mr. Mimms's use of Roche's valuation of lifting the Field restrictions. D.I. 236 at 2-3. Meso respectfully disagrees. Meso cited *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012). D.I. 192 at 32. In that case, the Federal Circuit rejected the argument that the plaintiff's damages expert should have been excluded because he used as a benchmark a license agreement that covered "patents *and* software services" but did not apportion "the value of the patent license from the value of the services." *ActiveVideo*, 694 F.3d at 1333. The court held that "[t]he degree of comparability of the [other] license agreements . . . are factual issues best addressed by cross examination and not by exclusion." *Id.* The situation here is the same.

---

[6] Meso has already stipulated that it will not seek any further damages for the sale of any Roche products that are included in the royalty base in this case. D.I. 192 at 30. This reality would be reflected in the hypothetical negotiation. In other words, the parties would understand that the hypothetical negotiation would result in freedom to operate in the United States during the applicable damages period.

[7] After Roche's acquisition of BioVeris in 2007, only Meso Scale had the ability to assert "core" or blocking patents like the '779 and the '729 patents to prevent Roche from selling out-of-Field. As explained above, the appropriate date of hypothetical negotiation post-dates Roche's acquisition of BioVeris.

8

Although Roche disagrees with how Mr. Mimms utilized Roche's valuation in his damages calculation, Mr. Mimms has articulated economically sound reasons for his approach. Roche's concerns are "best addressed by cross examination and not by exclusion." *Id.*

Beyond *ActiveVideo*, other cases also support Mr. Mimms's damages methodology. In *Decca*, the Court of Claims held that 7.5% was a reasonably royalty for infringement of one asserted patent. 640 F.2d at 1181. The court based this royalty on a license agreement that conveyed rights to the asserted patent and a portfolio of 60 other patents. *Id.* at 1165, 1180 n.72. The court rejected the argument that the 7.5% royalty rate from that license was too high because the license included rights to other patents, reasoning that the asserted patent "was the most valuable patent included in the [] license and, therefore, had Decca an[d] Bendix negotiated a license [o]n it alone, the royalty rate for such license would have been at least 7.5 percent." *Id.* at 1180; *see also Sprint Commc'ns Co. L.P. v. Time Warner Cable, Inc.*, 255 F. Supp. 3d 1134, 1138-40 (D. Kan. 2017) (denying motion to set aside damages verdict based on expert testimony that did not apportion amongst patents where expert assumed "that the patents were 'blocking patents'" and the evidence at trial supported that assumption).

Roche's position seems to be that in order for Meso's expert to use Roche's valuation as part of his damages calculation, Meso would have to assert every patent and every claim in the BioVeris portfolio. That would be impossible. The more than 100 patents in the BioVeris portfolio have thousands of claims. Meso instead took the reasonable approach of identifying a handful of claims from blocking patents in the portfolio that embody the value of the full portfolio because they have the ability to completely block Roche from practicing ECL. Meso has now further simplified the case by reducing the case down to just three patents and four claims. All of this is consistent with the Court's policy of encouraging parties to reduce the

9

number of claims the jury has to decide. *See* Revised Procedures for Managing Patent Cases at 7 (June 18, 2014) (the Court is "highly receptive to reasonable proposals to reduce, at an appropriate stage or stages of a case, the number of: patents-in-suit, [and] asserted claims"). Meso's damages expert should not be excluded simply because Meso tried to make this case manageable. If left uncorrected, the Court's ruling will incentivize parties to assert and maintain through trial as many patents and claims as possible from any patent portfolio in order to avoid an artificial reduction in their asserted reasonable royalty.

### III.   The Court's Decision Will Cause Manifest Injustice

Reconsideration is especially appropriate when the Court's error would cause "manifest injustice." *Intellectual Ventures*, 215 F. Supp. 3d at 321. That is exactly what will happen here. Without Mr. Mimms Meso will not have any expert testimony as to what a reasonable royalty would be. The jury will only hear from Roche's expert on this issue. Such a one-sided presentation of expert testimony on the key issue of damages will severely prejudice Meso. Therefore, reconsideration is warranted.

## CONCLUSION

For these reasons, Meso respectfully requests that the Court grant this motion and reconsider its *Daubert* ruling regarding Quentin Mimms.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Steven E. Derringer<br>BARTLIT BECK LLP<br>54 West Hubbard Street, Suite 300<br>Chicago, IL 60654<br>(312) 494-4400<br><br>John M. Hughes<br>Nosson D. Knobloch<br>Daniel C. Taylor<br>BARTLIT BECK LLP<br>1801 Wewatta Street, Suite 1200<br>Denver, CO 80202<br>(303) 592-3100<br><br>October 29, 2019 | MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com<br>jtigan@mnat.com<br><br>*Counsel for Defendant/Counterclaim Plaintiff Meso Scale Diagnostics, LLC.* |